IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4-25CR-077-P |
| JARED MCNUTT (01) | |

## INFORMATION

The United States Attorney charges:

At all times material to this information:

### Summary of the Scheme

1. From in or about December 2021 through in or about October 2022, defendant **Jared McNutt**, along with others known and unknown, engaged in a conspiracy and a scheme to defraud using a cryptocurrency mining business called Geosyn. As part of the scheme, **Jared McNutt** and his coconspirators made material misrepresentations to induce individuals and entities to invest money and contribute cryptocurrency mining machines to Geosyn's mining pool.

### Background

2. Bitcoin is a type of electronic currency that exists entirely on the internet and not in any physical form. Individuals can "mine" for bitcoin by contributing computing power to verify and record bitcoin transactions, and are rewarded by being given newly created bitcoin. Individuals can pool their miners to increase the overall computing power, with any bitcoin earned then being distributed based on a miner's contribution to the pool. Bitcoin

**Information - Page 1**

mining typically requires specialized computers, called "miners," and consumes a large amount of electricity.

3. Geosyn Mining, LLC and related Geosyn entities (collectively, "Geosyn") were registered in the state of Texas and had their principal place of business in the Northern District of Texas, with locations in Fort Worth and Springtown. Geosyn purported to allow clients to pool bitcoin mining machines and be paid out a percentage of the pool's earnings.

4. Defendant **Jared McNutt** resided in the Northern District of Texas and was sales manager at Geosyn.

5. Geosyn used the term "clients" to refer to individuals and entities who agreed to contribute bitcoin miners to Geosyn's mining pool. Although a client agreed with Geosyn to keep miners at Geosyn facilities and contribute to Geosyn's mining pool, clients retained ownership of their miners.

6. Clients could either send their own miners to Geosyn and pay a fixed setup fee per miner, or clients could have Geosyn purchase miners for them in exchange for a 13–15% procurement fee, which Geosyn represented would cover all costs associated with the acquisition, installation, and set up of the miners.

7. In exchange for Geosyn providing hosting and management services, clients agreed to pay Geosyn a monthly service fee in the form of a percentage of bitcoin earned. **Jared McNutt** and his coconspirators told clients that Geosyn would charge electricity at cost-equivalent, meaning clients would pay their share of the total actual electricity cost of the mining pool.

Information - Page 2

Count One
Conspiracy to Commit Wire Fraud
(Violation of 18 U.S.C. § 371 (18 U.S.C. § 1343))

8. From in or about May 2022, through in or about October 2022, in the Northern District of Texas and elsewhere, defendant **Jared McNutt**, along with others known and unknown, did knowingly and willfully combine, conspire, confederate, and agree to commit wire fraud, that is, to devise and intend to devise a scheme and artifice to defraud and to obtain property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice and attempting to do so, caused to be transmitted by means of wire communications in interstate and foreign commerce writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

Purpose of the Conspiracy

9. The purpose of the conspiracy was to deceive current and potential clients and investors about the financial and material conditions of Geosyn, in order to (1) induce current clients not to withdraw from Geosyn, (2) induce potential clients to purchase machines through Geosyn, and (3) enrich **Jared McNutt** and his coconspirators.

Manner and Means of the Conspiracy and Scheme to Defraud

10. The manner and means by which **Jared McNutt** and his coconspirators sought to accomplish the purpose of the conspiracy included, among other things:

11. *Misrepresenting the actual cost of miners.* Although **Jared McNutt** and his coconspirators told potential clients that Geosyn would only charge 15% to acquire mining

machines, at times Geosyn would lie to potential clients about the cost of the machines in order to reap additional profits for themselves.

12. *Falsified earnings reports and payments.* At least as early as June 2022, **Jared McNutt** and his coconspirators knew that Geosyn did not have the infrastructure to bring online the miners that clients had already purchased. To cover for this shortfall, one of **Jared McNutt's** coconspirators sent out materially false distribution reports that inflated the actual bitcoin mined by Geosyn's pool and depicted mining production and returns for clients whose miners were not purchased or were not actually being operated. In order to cover the differential and pay clients for bitcoin that had not actually been mined, a coconspirator bought bitcoin and provided the bitcoin to another coconspirator, who transfer it to the clients without telling the clients that their miners were not actually purchased or operating. **Jared McNutt** and his coconspirators continued to solicit new clients, but instead of using these new clients' funds to purchase the clients' miners as agreed, **Jared McNutt** and his coconspirators used the funds to pay off existing clients and pay for personal expenditures.

13. *Misrepresenting that clients' miners had been purchased.* At least as early as August of 2022, **Jared McNutt** and his coconspirators began misrepresenting to clients that miners had been purchased with the clients' funds when, in fact, **Jared McNutt** and his coconspirators never actually purchased some of the clients' miners. Instead, **Jared McNutt** and his coconspirators were misappropriating client's funds to cover other business expenses and to pay for personal expenses.

## Overt Act

14. In furtherance of the conspiracy and to effect its object, on or about September 20, 2022 in the Fort Worth Division of the Northern District of Texas, **Jared McNutt** emailed a victim, telling the victim that the victim's miners had been installed and were running. In fact, **Jared McNutt** knew that the victim's machines had not even been purchased. Based on this materially false statement, on September 30, 2022, the victim purchased additional miners from **Jared McNutt** and his coconspirators. Again, however, **Jared McNutt** and his coconspirators did not purchase the miners and instead spent the funds on other things.

All in violation of 18 U.S.C. § 371 (18 U.S.C. § 1343).

## Forfeiture Notice
(18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p))

15. Pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p), upon conviction of any offense violating 18 U.S.C. §§ 1349 and/or 1343, the defendant, **Jared McNutt**, shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the scheme to defraud and/or conspiracy.

16. The government may seek a forfeiture money judgment.

17. The government may seek substitute property as allowed by 21 U.S.C. § 853(p), which is applicable under 28 U.S.C. § 2461(c).

CHAD E. MEACHAM
ACTING UNITED STATES ATTORNEY

MATTHEW WEYBRECHT
Assistant United States Attorney
State Bar of Texas No. 24102642
Telephone: 817-252-5200
Fax: 817-252-5455
matthew.weybrecht@usdoj.gov